IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WRONGFUL DEATH ESTATE
OF MIGUEL GONZÁLEZ,
by and through Wrongful Death
Estate Personal Representative
Joanna Rodríguez,

JOANNA RODRIGUEZ, on her
own behalf and as
Mother and Next Friend of
ME Gonzalez, a minor child,
DJ Gonzalez, a minor child,
and AX Gonzales, a minor child,

    Plaintiffs,

    vs.                              No. CV 18-125 KG/LF

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, NEW
MEXICO, MANUEL GONZALES, III, Sheriff
of Bernalillo County, CHARLES COGGINS, a Deputy
Sheriff of the Bernalillo County Sheriff's
Department, and JOHN DOES 1 through
7, Deputy Sheriffs (Deputy Sheriffs) of the Bernalillo
County Sheriff's Department, Individually
and in their Official Capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the County Defendants'[1] *Daubert* Motion to Exclude the Testimony of William Harmening (Motion to Exclude), filed November 29, 2018. (Doc. 92). Plaintiffs filed a response on January 7, 2019, and the County Defendants filed a

---

[1] "County Defendants" refers to Defendants Board of County Commissioners of the County of Bernalillo, Sheriff Manual Gonzales, III, and Deputy Charles Coggins.

reply on January 21, 2019. (Docs. 104, 110). Having considered the briefing, the record, and the relevant law, the Court grants the County Defendants' Motion to Exclude (Doc. 92).

I.      Background and Procedural History[2]

Around 1:00 a.m. on July 4, 2017, Deputy Charles Coggins (Coggins) was dispatched to a car wash based on a report that some individuals were loitering. Deputy Skartwed also responded, but did not remain at the car wash. Coggins was in a marked Bernalillo County Sherriff's Office (BCSO) vehicle. At the car wash, Coggins noticed a red Monte Carlo sedan and observed the driver[3] make a quick or furtive motion. Coggins ran the Monte Carlo's license plate through a database which reported the license plate to be stolen.

Coggins lost sight of the Monte Carlo at some time before leaving the car wash, but Deputy Skartwed observed the Monte Carlo and radioed back the vehicle's location. Coggins and Deputy Skartwed, in separate vehicles, proceeded to follow the Monte Carle into a neighborhood. At a "T" intersection, Deputy Skartwed went one direction and Coggins went the other.

As Coggins drove, he noticed a vehicle headed toward him. Coggins activated his spotlight to illuminate the vehicle and saw that it was the red Monte Carlo. Coggins identified the driver's physical characteristics over the radio. The Monte Carlo accelerated toward Coggins' vehicle and passed him, driving in the oncoming traffic lane. Coggins made a U-turn, engaged his emergency lights, and followed the Monte Carlo. The Monte Carlo did not yield to the emergency lights and came to a stop only after running over a curb.

---

[2] Unless otherwise noted, the following facts were stipulated by the parties in their briefing on the cross-motions for summary judgment. (Docs. 84, 87, 91, 99, 108).
[3] Coggins did not know the identity of the driver until later, but decedent Miguel Gonzalez was identified as the driver.

2

The driver, Gonzalez, got out of the Monte Carlo and ran south toward a house. Coggins gave chase. Coggins attempted to activate his radio during the chase five times to update dispatch and Deputy Skartwed on his location, but he was unable to activate the radio. Coggins heard Gonzalez yelling something indistinct as Gonzalez ran toward the residence. Gonzalez continued toward the side yard of the house and jumped a gate leading to the backyard. Coggins continued to pursue Gonzalez and also jumped the gate.

Coggins testified at his deposition that he heard Gonzalez say "get back or I'll shoot." Deputy Skartwed was nearby, but did not hear this alleged statement.

When Coggins came to a stop in the backyard, Gonzalez stood near a cinderblock wall and was "bladed" (*i.e.*, at a 90-degree angle) toward Coggins. Gonzalez "punched out" his right arm – meaning that he fully extended his arm as if aiming a gun – toward Coggins. Gonzalez was holding a dark object in his hand. Coggins believed the dark object was a firearm, based on Gonzalez's body position and statements. Based on all of these factors, Coggins believed Gonzalez was preparing to shoot him.

Coggins fired four shots, striking Gonzalez four times. Gonzalez died on scene from his injuries. Investigating officers recovered a holstered handgun, identified by Gonzalez's children as the one he regularly carried in his waistband.

Joanna Rodriguez (Rodriguez), as personal representative of Gonzalez's estate, brought this case against Coggins and the other County Defendants, alleging Coggins violated Gonzalez's Fourth Amendment right to be free from the use of excessive force. Specifically, Rodriguez asserts that Gonzalez was running away from Coggins, did not brandish a firearm, and did not pose a danger to Coggins at the time of the shooting.

A. *Plaintiff's Retained Expert, William Harmening*

The Court originally set a June 1, 2018, deadline for Rodriguez to disclose her experts and provide expert reports, (Doc. 14) at 2, and it extended the deadline until July 16, 2018, on joint motion of the parties, (Doc. 33) at 2. On July 16, 2018, Rodriguez disclosed Professor William Harmening (Harmening) as an expert in police practice and use of force. (*See* Doc. 64-1) (Harmening's "Force Analysis" Report, dated July 16, 2018). Harmening holds an M.A. in Psychology from the University of Illinois at Springfield, teaches psychology and criminal justice at various institutions as an adjunct professor, and serves as the Chief Special Agent for the Illinois Securities Department. (Doc. 64-1) at 2; (Doc. 84-5) at 2.

During his career in law enforcement, Harmening participated in one homicide investigation, sometime between 1990 and 1993. (Doc. 92-2) at 6. He has never been a crime scene specialist or criminalist. (*Id.*) at 7. As an instructor at the Lincolnland Police Training Center, in Springfield, Illinois, Harmening taught crime scene processing techniques approximately ten times to police cadets, but has never taught courses or segments involving the techniques of crime scene processing to criminalists. (*Id.*) at 7-8. Harmening has never investigated an officer-involved shooting, though he participated in collecting and documenting a shooting crime scene approximately four times. (*Id.*) at 8. He has never conducted forensic analysis on a bullet, and admits he is not qualified to analyze the characteristics of blood or other fluids, or to examine a firearm, cartridge, or bullet for tool marks. (*Id.*) at 9. He has never studied the manner in which ammunition travels through the body and admits he is not qualified to make such analyses. (*Id.*) at 10. In 1991 Harmening took one course on investigative methods, including wound characteristics, which lasted less than a day; he took other investigative training in the early 1980s. (*Id.*) at 10-11. He is not a member of any professional

organization involving forensic analysis of any kind and does not hold any certifications or licenses involving crime scene analysis or reconstruction. (*Id.*) at 12-13. He has never conducted any experiments in wound ballistics or characteristics. (*Id.*) at 13. Harmening testified that he has not received any training regarding blood stain patterns, shooting reconstruction, or crime scene processing with regard to evidence in a violent crime since 1993. (*Id.*) at 14. Though Harmening has been published in peer-reviewed formats, none of those publications deal with processing or analyzing physical evidence. (*Id.*) at 14. Harmening has been accepted as an expert in securities fraud and securities fraud investigation, but has never been accepted by a court as an expert in any other area. (*Id.*) at 17.

In preparing his report and opinions, Harmening used "reports, incident scene charts, measurements, and photographs" created by the BCSO and the Albuquerque Police Department, "lab reports drafted by the New Mexico Dept. of Public Safety Forensics Lab and the Office of the Medical Examiner at the University of New Mexico Health Science Center," and the "statements of Deputies Coggins" and his shift-mate, Deputy Skartwed; he also "consulted scientific research[.]" (Doc. 64-1) at 4.

Harmening opined in his July 16, 2018, expert report and his October 29, 2018, affidavit, (Doc. 84-5), that: 1) the County Defendants failed to follow investigative procedures or otherwise adequately investigate and preserve evidence following the shooting; 2) blood spatter evidence contradicts Coggins' story; 3) bullet defects in the cinderblock wall contradict Coggins' story; 4) Gonzalez's handgun was moved after the shooting; 5) Coggins' belt tape contradicts his story and audibly demonstrates that cinderblocks were moved; 6) Gonzalez was attempting to jump the cinderblock wall, facing away from Coggins, when he was shot; 7) Coggins fired the

fourth round at point-blank range into Gonzalez's neck; and 8) Coggins made up the story about Gonzalez threatening to shoot him and pointing an object at him. (Docs. 64-1 and 84-5).

At his September 10, 2018, deposition, Harmening states that he did not consider psychology in this case and views this as "almost strictly a physical evidence case." (Doc. 92-2) at 1. In evaluating and opining on the physical evidence, Harmening testified that he does not follow a prescribed method but uses his own methodology. (*Id.*) at 2. With respect to his opinion on the concrete blocks, Harmening agrees that he is not offering an expert opinion because he thinks "any juror can look at those pictures and make their own determination that that's four pieces of the same block." (*Id.*) at 18-19.

II.  Standard of Review

The proponent of expert testimony bears the burden of proving the foundational requirements of Federal Rule of Evidence 702 by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Rule 702 requires:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or date;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Each expert's opinions are subject to the same standard of reliability that govern the opinions of strictly scientific experts retained for the purposes of litigation. *See Kumho Tire*, 526 U.S. at 151 (holding *Daubert* applies even when expert's opinion relies on skill or experience-based observation).

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). Even so, Rule 702 and *Daubert*/*Kumho* require trial courts to act as gatekeepers by ensuring all expert testimony, whether scientific, technical, or based on any other specialized knowledge, is both reliable and relevant. *Kumho Tire*, 526 U.S. at 152-53. The court must first determine whether the proposed expert is qualified by knowledge, skill, experience, training, or education to render the opinion. Second, the court must determine whether the expert's opinions are sufficiently reliable. Fed. R. Evid. 702; *Kumho Tire*, 526 U.S. at 152-53; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Finally, the court must determine whether the proposed expert testimony will assist the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

III. Discussion

County Defendants argue that the Court should exclude Harmening under Rule 702 and *Daubert* because: 1) Harmening is not qualified to render opinions on blood evidence interpretation, wound characteristics, bullet trajectories, and shooting reconstruction; 2) Harmening's methodology is unreliable; 3) Harmening's interpretation of the belt tape and photographs are not helpful for the fact-finder; and 4) Harmening's statements about Coggins' or other witnesses' states of mind are speculative.

    A. *Whether Harmening is Qualified to Opine on Blood Evidence, Wound Characteristics, Bullet Trajectories, and Shooting Reconstruction*

County Defendants contend that Harmening is not qualified by education, training, or experience to opine on blood evidence, shooting reconstruction, wound characteristics, or bullet trajectories. The County Defendants specifically assert that Harmening's experience in securities

7

fraud and his minimal training from more than thirty years ago do not qualify him to testify on these topics.

Rule 702 uses a liberal definition of "expert." "[T]he expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'" Fed. R. Evid. 702 Advisory Committee's Note (1972). In other words, "the expert . . . should not be required to satisfy an overly narrow test of his own qualifications." *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (internal quotation omitted). A witness may qualify as an expert under Rule 702 even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("Who is 'best' qualified is a matter of weight upon which reasonable jurors may disagree."). "As long as an expert stays 'within the reasonable confines of his subject area,' our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'" *Ralston*, 275 F.3d at 970 (quoting *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1519-20 (10th Cir. 1996)).

Even applying the liberal definition of an expert, the Court does not see and Rodriguez does not argue any basis upon which to determine that Harmening is qualified to opine on blood evidence, shooting reconstruction, wound characteristics, or bullet trajectories. Harmening lacks training or experience in these areas and interpretation of the physical evidence is not "within the reasonable confines" of Harmening's expertise: psychology and securities fraud.

Therefore, the Court determines that Harmening is not qualified to render an expert opinion on these matters and grants the County Defendants' Motion to Exclude to the extent that Harmening may not testify about blood evidence, shooting reconstruction, wound characteristics,

or bullet trajectories. Encompassed in this ruling are any opinions Harmening may have regarding the order in which shots were fired, how or when evidence came into being, and whether items at the scene had been moved. Because Harmening lacks the requisite qualifications to testify in this area, the Court need not decide the County Defendants' other arguments about his methodology or reliability.

    B. *Whether Harmening Disclosed Additional Opinions*

While Rodriguez disclosed Harmening as a police policies and procedures expert, and spends the substantive majority of her response to the Motion to Exclude discussing him as a use of force expert, Rodriguez does not identify and the Court cannot discern any opinions rendered on these topics in Harmening's expert report. Rodriguez summarily states that the County Defendants admit they failed to follow internal procedures. True, but this admission means that expert testimony is not necessary to establish this failure.

Federal Rule of Civil Procedure 26(a)(2)(B) requires retained experts to provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Harmening's expert report and deposition testimony contain no additional opinions.

Even if the Court were to consider Harmening as a qualified expert in police policies and procedures and the use of force, the Court is unable to decide whether his opinions would be admissible because no such opinions have been provided. Without additional opinions to consider, and having determined that Harmening is not qualified to testify regarding blood evidence, shooting reconstruction, wound characteristics, or bullet trajectories, the Court finds that Harmening has not offered additional opinions in this case and may not testify as an expert.

IV. Conclusion

Examining Harmening's considerable training, education, and experience, the Court determines that he may be qualified as an expert in some things, but he is not qualified to render the proposed opinions in this case. Rodriguez failed to carry her burden of demonstrating by a preponderance of the evidence the admissibility of Harmening's report and testimony under Rule 702 and *Daubert*. Therefore, the Court grants the Motion to Exclude (Doc. 92) and excludes Harmening as an expert in this case.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE