IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WRONGFUL DEATH ESTATE
OF MIGUEL GONZÁLEZ,
by and through Wrongful Death
Estate Personal Representative
Joanna Rodríguez,

JOANNA RODRIGUEZ, on her
own behalf and as
Mother and Next Friend of
ME Gonzalez, a minor child,
DJ Gonzalez, a minor child,
and AX Gonzales, a minor child,

  Plaintiffs,

  vs.               No. CV 18-125 KG/LF

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, NEW
MEXICO, MANUEL GONZALES, III, Sheriff
of Bernalillo County, CHARLES COGGINS, a Deputy
Sheriff of the Bernalillo County Sheriff's
Department, and JOHN DOES 1 through
7, Deputy Sheriffs (Deputy Sheriffs) of the Bernalillo
County Sheriff's Department, Individually
and in their Official Capacities,

  Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment for Spoliation of Evidence (Spoliation Motion), filed November 2, 2018 (Doc. 84); Defendants Board of County Commissioners of the County of Bernalillo, Manuel Gonzales III, and Deputy Charles Coggins' (County Defendants) Motion for Partial Summary Judgment No. I: Dismissal of the Estate's Claim for Excessive Force in Count I (QI Motion), filed November 29, 2018 (Doc. 91); and County Defendants' *Daubert* Motion to Limit and Exclude Certain Testimony by

Brian McDonald, Ph.D. (Motion to Exclude), filed December 12, 2018 (Doc. 96).  Plaintiffs filed a response to the QI Motion on January 6, 2019, a response to the Motion to Exclude on January 7, 2019, and did not file a reply in support of their Spoliation Motion.  (Docs. 94, 99, and 103).  County Defendants filed a response to Plaintiffs' Spoliation Motion on November 14, 2018, and replies in support of their QI Motion and Motion to Exclude on January 21, 2019.  (Docs. 87, 108, and 112).  Having reviewed the Motions, the accompanying briefs, and the applicable law, the Count grants the County Defendants' QI Motion, denies Plaintiffs' Spoliation Motion, and denies as moot the County Defendants' Motion to Exclude.

I.  Background and Procedural History[1]

Around 1:00 a.m. on July 4, 2017, Deputy Charles Coggins (Coggins) was dispatched to a car wash based on a report that some individuals were loitering.  Deputy Skartwed also responded, but did not remain at the car wash.  Coggins was in a marked Bernalillo County Sherriff's Office (BCSO) vehicle.  At the car wash, Coggins noticed a red Monte Carlo sedan and observed the driver[2] make a quick or furtive motion.  Coggins ran the Monte Carlo's license plate through a database which reported the license plate to be stolen.

Coggins lost sight of the Monte Carlo at some time before leaving the car wash, but Deputy Skartwed observed the Monte Carlo and radioed back the vehicle's location.  Coggins and Deputy Skartwed, in separate vehicles, proceeded to follow the Monte Carle into a neighborhood.  At a "T" intersection, Deputy Skartwed went one direction and Coggins went the other.

---

[1] Unless otherwise noted, the following facts were stipulated by the parties in their briefing on the cross-motions for summary judgment.

[2] Coggins did not know the identity of the driver until later, but decedent Miguel Gonzalez was identified as the driver.

2

As Coggins drove, he noticed a vehicle headed toward him. Coggins activated his spotlight to illuminate the vehicle and saw that it was the red Monte Carlo. Coggins identified the driver's physical characteristics over the radio. The Monte Carlo accelerated toward Coggins' vehicle and passed him, driving in the oncoming traffic lane. Coggins made a U-turn, engaged his emergency lights, and followed the Monte Carlo. The Monte Carlo did not yield to the emergency lights and came to a stop only after running over a curb.

The driver, Gonzalez, got out of the Monte Carlo and ran south toward a house. Coggins gave chase. Coggins attempted to activate his radio during the chase five times to update dispatch and Deputy Skartwed on his location, but he was unable to activate the radio. Coggins heard Gonzalez yelling something indistinct as Gonzalez ran toward the residence. Gonzalez continued toward the side yard of the house and jumped a gate leading to the backyard. Coggins continued to pursue Gonzalez and also jumped the gate. Coggins testified at his deposition that he heard Gonzalez say "get back or I'll shoot." Deputy Skartwed was nearby, but did not hear this alleged statement.

When Coggins came to a stop in the backyard, Gonzalez stood near a cinderblock wall and was "bladed" (*i.e.*, at a 90-degree angle) toward Coggins. Gonzalez "punched out" his right arm – meaning that he fully extended his arm as if aiming a gun – toward Coggins. Gonzalez was holding a dark object in his hand. Coggins believed the dark object was a firearm, based on Gonzalez's body position and statements. Based on all of these factors, Coggins believed Gonzalez was preparing to shoot him.

Coggins fired four shots, striking Gonzalez four times. Deputy Skartwed arrived in the backyard after the shots were fired. Gonzalez died on scene from his injuries. Deputy Skartwed left Coggins unattended with Gonzalez's body on several occasions. Investigating officers

3

recovered a holstered handgun, identified by Gonzalez's children as the one he regularly carried in his waistband.

In 2017, BCSO had a code of ethics, rules, and procedures in effect. Officers wore tape recorders (belt tapes) and were required to activate these tapes during or in anticipation of traffic stops and/or situations involving resisting, evading, or obstructing an arrest. Use of the belt tape is mandatory. BCSO further required officers to preserve and collect physical and testimonial evidence for courtroom presentation, though not everything on scene that contains blood must be collected as evidence.

In the case of an officer-involved shooting, BCSO policy mandates videotaped documentation of the scene. This could and should have been done after the Gonzalez shooting, but it was not.

Detective James Fredrickson, the lead investigating officer, personally made the decision not to collect or preserve the cinderblocks on scene, and determined that preservation or testing of the cinderblocks would not have assisted in the investigation. Gonzalez's handgun, recovered from atop a cinderblock, did not have any blood on it.

Joanna Rodriguez (Rodriguez), as personal representative of Gonzalez's estate, brought this case against Coggins and the other County Defendants, alleging Coggins violated Gonzalez's Fourth Amendment right to be free from the use of excessive force.

II.  Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "When applying this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th

Cir. 2000) (internal quotation marks omitted). The movant bears the initial burden of showing the absence of a genuine issue of material fact, then the burden shifts to the non-movant to provide evidence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Evidence presented need not be in admissible form, but must be capable of presentation in admissible form. Fed. R. Civ. P. 56(c)(2). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit, and "genuine" if a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). A party cannot avoid summary judgment simply by resting upon the mere allegations or denials of his pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

III.     Discussion

Rodriguez moves for summary judgment in her favor as a sanction for the County Defendants' and other member of the BCSO's failure to preserve evidence after the shooting. In support of this argument, Rodriguez fairly argues that a party must preserve evidence that may be relevant to future litigation, and that the County Defendants' failures were so severe and pervasive as to warrant summary judgment in her favor as a sanction. (Doc. 84) at 12.

Conversely, the County Defendants move for summary judgment on the excessive force claim based on qualified immunity. (Doc. 91). The County Defendants argue the undisputed facts of record establish that Coggins did not use unreasonable force in seizing Gonzalez, and even if he did, the contours of the constitutional right at issue would not have put a reasonable officer in July 2017 on notice that Coggins' actions were unlawful. The Court considers these motions together.

5

A. Spoliation

Spoliation involves "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Moreno v. Taos Cnty. Bd. of Comm'rs*, 587 Fed. Appx. 442, 444 (10th Cir. 2014) (citation omitted). A failure to create evidence does not equate to spoliation. *Harmon v. United States*, 2017 WL 1115158, at *3 (D. Idaho 2017). However, a sanction or other penalty may be appropriate where a party fails to create evidence in violation of a statutory, regulatory, or internal policy obligation. *See, e.g.*, *Ramirez v. Pride Dev. & Const.*, 244 F.R.D. 162, 164 (E.D.N.Y. 2007) (imposing adverse inference instruction as penalty for defendant's failure to create records pursuant to New York Labor Law); *Smith v. United States*, 128 F. Supp. 2d 1227, 1223 (E.D. Ark. 2000) (imposing adverse inference instruction as penalty for physician's failure to dictate post-surgical notes, in violation of hospital procedure).

Rodriguez identifies three categories of evidence the County Defendants failed to create or preserve: 1) Coggins' belt tape; 2) videotape of the scene; and 3) preservation of bloodstained items at the scene. When taken together, Rodriguez argues, these failures show a sufficiently pervasive pattern of prejudice to warrant summary judgment in her favor as a spoliation sanction.

As to the belt tape, the parties agree that BCSO policy requires officers to engage their belt tapes prior to a traffic stop. Coggins claims he attempted to engage his belt tape, but was unable to do so until after encountering Gonzalez in the backyard. Viewed in the light most favorable to the County Defendants, as the non-movants, there exists a genuine issue of material fact as to whether Coggins' explanation for not engaging his belt tape earlier would satisfy a jury and excuse his violation of BCSO policy. As such, the Court denies Plaintiffs' motion for summary judgment based on spoliation on this point.

The parties further stipulate that the County Defendants created a 3D scan of the scene rather than videotaping the scene. (Doc. 87) at UMF A; D.N.M.LR-56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted."). Though not expressly the same as videotaping the scene, a 3D scan satisfies the same purpose and is likely more accurate than a videotape. As such, the Court finds the County Defendants did not spoliate evidence or engage in sanctionable conduct with respect to the videotape issue. Thus, the Court denies Plaintiffs' Spoliation Motion on this point.

Finally, the County Defendants admit they are required to preserve and collect physical and testimonial evidence for courtroom presentation. (Doc. 84) at UMF 16; (Doc. 87) at UMF 16. Detective Frederickson testified that he did not test the scene for blood evidence because "[t]here's only one person whose been shot here[; i]t's [Gonzalez's] blood, and we're not going to test it." (Doc. 84-3) at 17 (Dep. Det. Frederickson at 98:25-99:8). Detective Frederickson further testified that he decided not to preserve bloody cinderblocks because they would not be helpful in the investigation. (Doc. 84) at UMF 31; (Doc. 87) at UMF 31.

However, Rodriguez pointed to no policy, procedure, practice, or other document requiring officers to preserve all blood evidence or cinderblocks, or to have preserved the cinderblocks in this case.[3] As the movant, and the party seeking sanctions based on evidentiary failures, Rodriguez bears the burden of establishing the violation. She cannot carry that burden in this case.

---

[3] Rodriguez tacitly advances Professor William Harmening to opine on BCSO's investigation. As discussed in the concurrently filed Memorandum Opinion and Order, Harmening lacks the requisite qualifications to opine on any issue discussed in his expert report. Therefore, the Court does not consider Harmening's opinion.

On the facts presented, the Court is not persuaded that the County Defendants spoliated evidence. As an initial matter, the Court does not find sanctionable conduct based on the County Defendants' use of a 3D scan rather than videotape or their decisions with respect to preserving physical evidence. With respect to Coggins use of the belt tape, the Court finds a genuine issue of material fact precluding summary judgment, as a reasonable jury could accept or reject Coggins' statement that the belt tape would not engage when he tried to turn it on. While the County Defendants admit they failed to follow internal procedure, and the Court finds it troubling that BCSO concededly failed to adequately investigate the shooting, this failure does not rise to the level of spoliation. Therefore, the Court denies Rodriguez's motion for summary judgment in her favor as a sanction for the County Defendants' alleged spoliation of evidence.

B. Qualified Immunity

Even if Rodriguez could show spoliation, and could show that BCSO's failure to investigate and ultimate spoliation of evidence could be held against Coggins on the Fourth Amendment issue, it does not matter if she cannot present some further evidence of what occurred on July 4, 2017. At summary judgment, Rodriguez may not rest on her pleadings. The Court must evaluate the County Defendants' claim of qualified immunity based on the facts of record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). When a defendant claims qualified immunity on summary judgment, "the plaintiff must meet the heavy two-part burden of showing that (1) a reasonable jury could find facts supporting a violation of the constitutional right, and (2) the

constitutional right was clearly established at the time of the defendant's conduct." *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (internal citations, alterations, and quotation marks omitted). Courts have discretion to decide the order in which to engage these two prongs. *Pearson*, 555 U.S. at 236. If the plaintiff fails to make either showing, a court must recognize the defendant's qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

"When a plaintiff alleges excessive force . . . , the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *see also Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." (internal citation omitted)) . "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted) ; *see also Garner*, 471 U.S. at 9 ("The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrated the interest of the individual, and of society, in judicial determination of guilt and punishment. Against these interests are ranged governmental interests in effect law enforcement."). The "proper application" of the Fourth Amendment's reasonableness test "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The inquiry "is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Considering the three *Graham* factors here, the parties agree that Coggins was dispatched to the car wash based on reports of suspicious activity, that the license plate affixed to the Monte Carlo came back stolen, and that Gonzalez did not yield after Coggins activated his emergency lights in the neighborhood, but instead drove in the oncoming traffic lane. The parties further stipulate that Gonzalez exited his vehicle and ran south, yelling as he approached a residence, and jumped a gate leading to the backyard of that residence. Perhaps most critically, Coggins testified that he heard Gonzalez say "get back or I'll shoot." While Deputy Skartwed did not hear this statement, Coggins' testimony remains uncontroverted. Furthermore, the parties stipulate that Gonzalez stood in the dark backyard, "bladed" (*i.e.*, perpendicular) to Coggins, and that Gonzalez "punched out" at Coggins with his right arm while holding a dark object in his hand.[4]

Coggins reasonably suspected Gonzalez, based on the reportedly stolen license plate, of motor vehicle theft (a felony) and display of a false registration document (a felony). These constitute serious, and potentially dangerous, offenses that are construed in favor of Coggins. As

---

[4] Gonzales did possess a firearm, though his firearm remained holstered.

to the third prong, when Gonzalez ran from his vehicle, he attempted to evade arrest. This, too, is construed in favor finding the force reasonable.

The second *Graham* factor is the most important. "A reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often too late to take safety precautions." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). When an officer is threatened with a firearm – or reasonably believes that he has been so threatened – that officer may use deadly force. *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015).

Even without considering Gonzalez's purported statement ("get back or I'll shoot"), the reasonable officer in Coggins' position would nonetheless believe that Gonzalez posed an immediate threat to him, other officers, and the public. Viewing the facts as Coggins saw them, Gonzalez fled a valid attempt at a traffic stop, drove the wrong way down a neighborhood street around 2:00 in the morning, fled on foot into a neighborhood, and "punched out" at Coggins while holding a dark object. The parties stipulate to this series of events. To the extent that factual disputes exist, all factual disputes stem from whether Gonzalez in fact verbally threatened Coggins and how BCSO conducted the investigation. These disputes are not material to the Fourth Amendment issue. Thus, this factor as well weighs in favor of finding that Coggins' use of force was reasonable under *Graham*.

Viewing the evidence in the light most favorable to Rodriguez, a reasonable jury could not conclude that Coggins' use of force violated Gonzalez' Fourth Amendment rights. The Court notes that, in making this ruling, it does not opine on whether any set of facts could be adduced or presented that would overcome qualified immunity. Rather, the Court's decision rests solely on the evidence presented in this case.

Because Rodriguez failed to carry her burden of establishing that Coggins violated Gonzalez' Fourth Amendment right to be free from an unreasonable seizure, the Court need not consider whether the right at issue was clearly established in July 2017. Rodriguez failed to establish one of the requisite prongs to overcome qualified immunity. Therefore, the Court concludes that Coggins is entitled to qualified immunity on the excessive force claim and grants the County Defendants' motion for summary judgment on that basis.

Having granted the County Defendants' motion for summary judgment, the Court need not address the Motion to Exclude and denies the same as moot.

Finally, having so concluded, the Court notes that the only remaining "count" in the Second Amended Complaint is for punitive damages, which is not a substantive, stand-alone claim. Therefore, the Court dismisses the punitive damages claim with prejudice because it is derivative of the excessive force claim.

IV. Conclusion

Rodriguez cannot establish that the County Defendants spoliated evidence, much less that she should be granted summary judgment as sanction for that conduct. Qualified immunity applies because Rodriguez cannot establish that Coggins' use of force violated Gonzalez' Fourth Amendment right to be free from unreasonable seizure. Even if Rodriguez could show that the County Defendants spoliated evidence, qualified immunity would still apply because an adverse inference, without more, cannot satisfy Rodriguez's burden at summary judgment.

IT IS, THEREFORE, ORDERED that

1. Plaintiffs' Motion for Summary Judgment for Spoliation of Evidence, filed November 2, 2018 (Doc. 84), is denied;

2. Defendants Board of County Commissioners of the County of Bernalillo, Manuel Gonzales III, and Deputy Charles Coggins' Motion for Partial Summary Judgment No. I: Dismissal of the Estate's Claim for Excessive Force in Count I, filed November

29, 2018 (Doc. 91), is granted and that claim is dismissed with prejudice;

3. Count 2, Punitive Damages, is dismissed with prejudice as it cannot survive without the excessive force claim;

4. County Defendants' *Daubert* Motion Limit and Exclude Certain Testimony by Brian McDonald, Ph.D., filed December 12, 2018 (Doc. 96), is denied as moot;

5. Judgment is entered in favor of the Defendants on the excessive force claim, Count I, and the punitive damages claim, Count 2; and

6. This case is dismissed with prejudice.

                                                                UNITED STATES DISTRICT JUDGE